## GEORGE LAUDER v. LOGAN, GREGG & CO.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 24, 1888—Decided November 5, 1888.

1. Where the recorded statement of a limited partnership, organized under the act of June 2, 1874, P. L. 271, set out that three fourths of the capital was payable in money at the execution thereof, a member is not to be deprived of the protection of the statute because of the fact that, although the three fourths of the capital was paid in, yet each member had not contributed thereto in proportion to the amount of his stock.

2. [In this case, the requirements of the statute as to the particulars of the statement, the payment of subscriptions to the capital, and as to the method of keeping the subscription-list book, are discussed per Mr. Justice WILLIAMS.]

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 113 October Term 1888, Sup. Ct.; court below, No. 455 June Term 1887, C. P. No. 1.

On May 2, 1887, a summons in case had issued in an action wherein Edward Gregg, George B. Logan and Thomas A. Parke, partners as Logan, Gregg & Co., were plaintiffs, and Gorge Lauder, F. H. Oliphant and S. D. Oliphant, doing business as The Wampum Iron Co., Limited, were defendants, which was served upon George Lauder and returned n. e. i. as to the other defendants.

At the trial on May 1, 1888, the facts out of which the case as decided arose were as follows:

On January 25, 1881, the three defendants, formed a limited partnership association under the act of June 2, 1874, P. L. 271, and its supplements, to engage in the business of mining coal, iron-ore and limestone, and of manufacturing pig-metal and coke, in the county of Lawrence, with its principal office and place of business in Wampum, said county.

In the statement, duly recorded as required by the statute, it was set forth, inter alia:

"1. The names of the members of this association, and the amount of capital subscribed by each, are as follows:

George Lauder, of Pittsburgh, Pa., 100 shares, $10,000.00
F. H. Oliphant, Mercer county, Pa., 60 shares,   6,000.00
S. D. Oliphant,    "    "    "  40    "    4,000.00

2. The total amount of capital of said association is twenty thousand dollars ($20,000), divided into two hundred shares of one hundred dollars each, payable in money, three fourths at the signing of this statement, and one fourth at four months from the date hereof."

It appeared, however, from the subscription-list book of the association and other evidence, that at the time the statement was executed the members had paid upon their shares as follows:

Charge of Court below.

| | | |
|---|---|---|
| George Lauder | . . . . . | $10,000 |
| F. H. Oliphant | . . . . . . | 2,000 |
| S. D. Oliphant | . . . . . | 3,000 |
| Total | | $15,000 |

The indebtedness of the association to the plaintiffs to the amount claimed was undisputed, although the nature of it did not appear upon the paper books.

The court, SLAGLE, J., charged the jury as follows:

The case turns largely upon a question of law. The suit is brought against members of a limited partnership, organized under an act of assembly which requires certain formalities in order to give the parties the benefit of the act.

In respect to the payment of the capital which is invested, the law requires that a statement shall be made that shall set that forth, and it must be set forth in accordance with the facts. There is no allegation here of any want of good faith in the parties who made this statement. They believed that they were doing just what the law justified them in doing, and that is a question that has to be determined now by me. For the present, I say to you that the statement which the defendants made in this case was not a compliance with the law and I therefore instruct you, as requested by the plaintiffs' first point. This point is affirmed, not because, as I said, the statement is corruptly false, but because it does not state the facts as required by the act of assembly. There was fifteen thousand dollars paid in, as appeared by the evidence, but it was not paid in by each of the partners in proportion to the amount he subscribed, which I regard as an essential matter, and, therefore, not having been so paid, the parties became liable as general partners.

There is no dispute about the amount of plaintiffs' bill, and, as I understand, there is no dispute as to the manner in which the money was paid in; therefore, under these instructions your verdict ought to be for the plaintiffs. I have submitted it to you, however, to find the facts.

Plaintiffs' counsel requests the court to charge:

1. That if the jury believe from the evidence that the defendant and his partners filed a statement in the recorder's

office of Lawrence county, in relation to the Wampum Iron Co., Limited, to which they were subscribers, that was false, as follows, to wit: That the capital stock of said partnership association was $20,000, three fourths of which had been paid in by the subscribers at the time of the organization; and that while the said George Lauder and S. D. Oliphant had paid in their proper proportions, the said F. H. Oliphant had paid only $2,000, which was $2,500 short of his proper proportion, and that neither of the Oliphants has ever paid anything further; such false certificate was not a compliance with the act of assembly, and all the subscribers to said association became liable as general partners, and the verdict should therefore be for the plaintiffs.

Answer: Affirmed.[1]

The court is requested by defendant's counsel to charge:

1. That, as the evidence of both parties discloses that the claim of plaintiffs was contracted with the Wampum Iron Co., Limited, an association organized under the act of 1874, the plaintiffs are not entitled to recover in this action, unless it has been made to appear that said association was not duly organized under said act, or did not conduct its business in accordance with the provisions thereof.

Answer: Affirmed.

2. That, under the evidence, the organization of the said Wampum Iron Co., Limited, was in accordance with law, if the jury believe that the cash payment of $15,000 on account of the capital was duly made.

Answer: Affirmed. What is due payment is stated in answer to plaintiffs' first point.[2]

The jury returned a verdict in favor of the plaintiffs for $531.40. Judgment having been entered, the defendant Lauder took this writ assigning as error:

1. The affirmance of plaintiffs' 1st point.[1]
2. The refusal of defendant's 2d point.[2]

*Mr. George Shiras, Jr.*, for the plaintiff in error:

It is difficult to see any substantial foundation for the view that because F. H. Oliphant did not pay in three fourths of his subscription, at the time of the organization, when three

Arguments.

fourths of the whole stock had been paid in, the organization was vitiated and the defendant deprived of the immunity of the statute. It is not pretended that the plaintiffs were in anywise misled. The particulars as to the payments made and to be made would have appeared upon an inspection of the books. This court has already held in Hill v. Stetler, 21 W. N. 255, not yet reported in the state reports,* that "we do not hold it necessary to a valid organization that the entire subscribed capital should be paid into the treasury before an association can begin business. The act of 1874 contemplates the possibility of unpaid balances, and provides a method by which creditors can reach them. But we hold that an association has no right to enter upon business until some part of the subscribed capital has actually been paid. The statement should show when and in what amounts the capital is to be paid, and the subscription-list book should thereafter show the payment or the failure to pay the instalments falling due after the recording of the statement."

*Mr. W. K. Jennings,* for the defendants in error:

"General partners, by recording a statement in due form, false with respect to subscription and payment of capital, are not within the statute which, on certain terms, abrogates the common law rule that he who contracts to contribute capital and share in the profits of a firm, shall be liable for its debts. Each partner is liable, unless saved by statute . . . . . The recorded statement must show the full names of the partners, with the amount of capital subscribed for by each, and when and how to be paid:" Eliot v. Himrod, 108 Pa. 569. It seems clear that the words, by each, were intended to apply, not only to the amount subscribed, but to the time and manner of payment. It does not relieve one member to say that he paid in his full amount and should not, therefore, be held liable for the default of his partner. "Where the chief requisite in the recorded statement is false, the partners who misstated the fact have no shield against the rule of the common law respecting their liability:" Eliot v. Himrod, supra.

---

* Hill v. Stetler, decided April 2, 1888, was on May 14, 1888, ordered for re-argument. At this date, February 13, 1889, the re-argument has not been heard.

OPINION, MR. JUSTICE WILLIAMS:

The system provided by the act of 1874, and its supplements, for the organization of joint stock companies, is comparatively new. It is well calculated to promote the industrial development of the commonwealth, and may be productive of important results, if its provisions are honestly and fully complied with; but it is capable of producing mischief and being made an instrument of fraud, if its provisions are disregarded. But few cases have yet arisen under the act of 1874, and its construction is, therefore, in several particulars, not well settled.

In its first section the act provides for the formation of associations to conduct any lawful business by "subscribing and contributing capital thereto, which capital shall alone be liable for the debts of such association." The mode of organization is the preparation of a statement in writing, signed and acknowledged by all the members, setting forth the following particulars:

1. The full names of the persons forming the association.

2. The amount subscribed by each person.

3. The total amount of the capital, and when and how to be paid.

4. The character of the business to be conducted, and the location of the same.

5. The name of the association with the word "Limited" added thereto as part of the same.

6. The contemplated duration of the association, and the names of the officers.

This statement when signed and acknowledged, is to be recorded in the office of the recorder of deeds of the proper county, and when so recorded the association is fully organized.

Section second requires all such associations to keep a "subscription-list book" showing the names of the members thereof, and the amount of capital stock due and unpaid from each.

Considering these provisions together it seems very clear that so much of the capital stock as the statement requires to be paid at the signing thereof must be actually paid in before anything further is done; and that the subscription-list book must show what remains unpaid, and from whom it is due. All payments made after the organization must be entered in

this book, so that an examination of it will show at all times just what remains due in the aggregate upon the capital stock, and what part of that sum is due from each member of the association. The recorded statement, therefore, and the subscription-list book will give to any one interested full information as to the actual capital in use by the association, and the unpaid capital that can be made available for its business or its debts.

A member of an association, organized in substantial compliance with these provisions of the act, is entitled to the benefit of the exemption from personal liability, beyond the amount of his stock, which is the important privilege conferred by this plan of organization.

In the case in hand, the statement was prepared in proper form, and signed, acknowledged, and recorded in accordance with the act of 1874. It gave the total amount of the capital stock as twenty thousand dollars, and set out that three fourths of that amount was payable " at the signing of this statement and one fourth four months from the date hereof." The subscription-list book kept by the association, showed the payment into the treasury of fifteen thousand dollars, at the proper time but not in equal or proportional amounts by the subscribers. The question now raised is whether this is such a disregard of or departure from the provisions of the act as makes the organization ineffectual, and converts the members into general partners who must be individually liable for all debts without regard to the amount of their capital stock. The learned judge of the court below so held, but we think he was mistaken. Such a construction would unnecessarily restrict the movements and cramp the operations of organizations formed and conducted in entire good faith.

The object of requiring the actual payment of a portion of the subscribed capital at the time of the organization is to secure for the association a bona fide cash capital with which to begin its business. It need not be the whole amount subscribed, but it must be the amount set out in the recorded statement as payable or to be paid upon its execution. The subscription-list book to be opened when the association is fully organized and its statement recorded, will show the amount paid in accordance with the statement, and it will show

the stock account of each member. Any one interested can therefore at any time ascertain the amount of capital then paid in, the amount outstanding, and from whom it is due.

There were three members of the Wampum Iron Company, viz.: George Lauder, who subscribed ten thousand dollars of the capital, and the two Oliphants, who subscribed the other ten thousand dollars. The statement set out that three fourths of the capital was to be paid in cash on the execution thereof. It was so paid, Lauder paying his subscription in full, and the Oliphants paying each one half of his own subscription. The manner of the payment of the three fourths of the capital was at once entered in the subscription-list book and was subject to the inspection of any one interested in knowing the situation. There was in this no fraud, no evasion, and there was no occasion for any one dealing with the " Wampum Iron Company, Limited," to be misled. The cash capital which the statement required should be paid at the outset was actually in the treasury, and the stock book showed from whom the balance was due. There was no concealment of anything about the capital stock, no attempt to do business without the money in the treasury which the statement indicated would be there, no attempt to secure credit upon a false basis, either by withholding from the public the means of information which the act contemplates, or by withholding from the association the money which their statement made payable at the outset.

We think there was a substantial compliance with the act, and that Lauder was entitled to its protection.

> The judgment is reversed, and a venire facias de novo awarded.